IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

CATHERINE H. DURVIN,

    Plaintiff,

v.                                                                             Civil Action No. 3:11cv575

UNITED STATES OF AMERICA,

    Defendant.

## MEMORANDUM OPINION

Before the Court is Defendant the United States of America's Motion for Summary Judgment. (Docket No. 18.) This motion has been fully briefed, and on May 31, 2012, the Court heard oral argument. Accordingly, this matter is ripe for disposition. The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1346(b)(1)[1] and 636(c).[2] For the reasons that follow, the Court will GRANT the United States' Motion for Summary Judgment.

---

[1] This statute provides in relevant part:

> [T]he district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for . . . personal injury . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

[2] On February 3, 2012, pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of a magistrate judge, and the Honorable Henry E. Hudson reassigned the case to the undersigned Magistrate Judge. (Docket Nos. 11, 12.)

## I. Factual and Procedural Background

### A. Undisputed Facts[3]

On Friday evening, December 18, 2009, a snowstorm came through the Mechanicsville area resulting in a heavy snowfall which continued until the evening of Saturday, December 19, 2009. Due to the snowfall, Dawn Jenkins, the Postmaster of the Mechanicsville Post Office located at 8050 Mechanicsville Turnpike, Mechanicsville, Virginia (hereinafter "the post office"), contacted Jenks & Jenks, LLC[4] and scheduled snowplow services for the post office on Saturday, December 19, 2009. Specifically, Jenkins requested Jenks & Jenks, LLC to plow and apply ice-melt chemicals to the post office parking lot and sidewalks.

On the morning of December 19, 2009, Jenks & Jenks, LLC arrived at the post office, plowed the parking lot and sidewalks, and applied a chemical treatment.[5] Due to the continuing snow on December 19, 2009, Jenkins spread ice-melt chemicals throughout the parking lot and sidewalks on five or six occasions that day and again contacted Jenks & Jenks, LLC, requesting the same snowplow services for Sunday, December 20, 2009.[6]

---

[3] Because the Court ultimately grants the United States' Motion for Summary Judgment, the Court recites and views these facts in the light most favorable to Durvin, the nonmoving party. It should be noted that Durvin attempts to raise numerous factual disputes. However, the vast majority of these factual disputes are not material because they are not outcome determinative. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court will address the remaining alleged factual disputes in this section.

[4] The post office has used this company for snowplow services for many years.

[5] Durvin attempts to dispute this fact, claiming that "the only evidence introduced by [the United States] is an invoice from Jenks & Jenks." (Pl.'s Resp. to Def.'s Mot. Summ. J. ("Pl.'s Resp.") 2.) Jenkins, however, testified in her declaration and deposition that she observed Jenks & Jenks, LLC perform these services on December 19, 2009. Also, Durvin testified that, when she pulled into the parking lot on December 21st, it had been plowed.

[6] Durvin "denies" this fact because "she has no firsthand knowledge of this fact." (Pl.'s Resp. 2.) However, the United States has presented admissible evidence in support of this fact, and Durvin has failed to refute it by pointing to any admissible evidence to the contrary.

No snow fell in the Mechanicsville area on Sunday, December 20, 2009 or Monday, December 21, 2009. Although the post office was closed on Sunday, December 20, 2009, when Jenkins returned to work on Monday morning, December 21, 2009, the parking lot and sidewalks had been re-plowed. While inspecting the parking lot that morning, Jenkins and Gloria Nelson, the Custodian of the post office, noticed that a few spots in the parking lot remained icy. At approximately 8:00 a.m., Nelson spread ice-melt throughout the post office parking lot and sidewalks, including over the visibly icy areas and the handicapped parking area.[7] Nelson did not place any warning signs outside of the post office.[8]

Shortly before 9:30 a.m. on Monday, December 21, 2009, Durvin drove into the post office parking lot and parked her vehicle. Although the parking lot had been plowed and looked clear, Durvin observed a snow mound in front of her vehicle. A snow mound also surrounded the flag pole, located on an island in the parking lot. Durvin knew the parking lot "was icy in

---

[7] Durvin "denies" this fact "because no one saw the existence of the ice melt in the parking lot or observed Nelson putting down ice melt in the parking lot." (Pl.'s Resp. 3.) Durvin's attempt to create a factual dispute fails for many reasons. First, despite Durvin's contention otherwise, Nelson unequivocally testified in her declaration and in her deposition that she spread ice-melt in the parking lot around 8:00 a.m. on December 21, 2009. Also, Jenkins testified that she saw Nelson carry a bag of ice-melt outside the facility the morning of December 21st, although she did not see Nelson apply the salt. Durvin cannot create a material dispute with Nelson's sworn testimony simply because no one saw her perform this duty.

Second, Durvin fails to properly support her assertion that "no one saw the existence of the ice melt in the parking lot." (Pl.'s Resp. 3.) The citations provided do not indicate that no one saw ice melt in the parking lot. (*See* Pl.'s Resp. 3 (*citing* Nelson Dep. 27-28; Dallas Dep. 34-35).)

Finally, while Durvin testified she did not see any ice-melt in the parking lot before her fall, she admitted that she did not know whether or not post office personnel applied ice-melt to the parking lot before her fall. Durvin has failed to point to admissible evidence to dispute Nelson's sworn testimony and instead impermissibly attempts to create disputed facts based on "mere speculation or the building of one inference upon another." *Barwick v. Celotex Corp.*, 736 F.2d 946, 963 (4th Cir. 1984).

[8] For purposes of the Motion for Summary Judgment, the United States does not dispute this fact. (Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s Mem. Supp.") 12 n.5.)

3

spots" and could be slippery so she walked carefully toward the post office entrance to mail a stack of Christmas cards.[9] (Def.'s Reply Br. Supp. Mot. Summ. J. Ex. 5, Pl.'s Answer to Def.'s Interrogatory No. 9, at 5.) Nothing obstructed Durvin's view of the path on which she walked. As she reached the handicapped parking spaces, she slipped and fell, breaking her arm. Durvin contends she slipped on what she would call "black ice . . . because [she] did not see it as being ice" due to the blacktop composition of the parking lot.[10] (Def.'s Mem. Supp. Ex. 3, Durvin Dep. 31:19-20.) Durvin admits, however, that the ice she slipped on appeared shiny.

---

[9] Durvin testified at her deposition that she does not recall whether or not she saw any ice or snow on the parking lot where she was walking. However, other deposition testimony and Durvin's response to Interrogatory No. 9 make clear that she knew the parking lot contained icy spots and could be slick. Further, Durvin admits that a photograph taken of the parking lot shortly after her fall contains visible ice, although she contends that photograph does not display the ice on which she slipped. (*See* Def.'s Mem. Supp. Ex. 4, Dallas Decl. Ex. B.)

To the extent Durvin attempts to create a factual dispute about whether she observed visible patches of ice in the parking lot, she cannot do so through her own conflicting sworn testimony. *Barwick*, 736 F.2d at 960 ("[A] genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct.").

[10] During oral argument, the United States argued for the first time that Durvin had presented no admissible evidence showing she slipped on black ice and thus could not meet her burden in showing how the accident happened. In response, Durvin pointed to an affidavit from her expert, a certified consulting meteorologist, and an attached AccuWeather report.

Durvin's expert opines: "Black ice is defined as a thin sheet of ice. The ice may appear dark in color because of its transparency. . . . Black ice can form . . . when moisture or standing water that is already on a surface freezes in place." (Pl.'s Resp. Ex. 4, Wistar Aff. ¶¶ 4-5.) The AccuWeather report states that water from melting snow on December 20, 2009 would have refrozen overnight and would have remained frozen at 9:30 a.m. on December 21, 2009. (Pl.'s Resp. Ex. 4, AccuWeather Report 2.)

Because the United States failed to raise this argument in briefing, and instead raised it for the first time during oral argument, the Court declines to consider it. *N.C. Alliance for Transp. Reform, Inc. v. U.S. Dep't of Transp.*, 713 F. Supp. 2d 491, 510 (M.D.N.C. 2010) ("Raising such new arguments for the first time at oral argument undermines the purpose of orderly briefing and risks subjecting an opponent to an unfair disadvantage."). For purposes of summary judgment, the Court will assume Durvin slipped on black ice.

At approximately 9:30 a.m., Jenkins and Nelson received a report that someone had fallen in the parking lot. They went to the parking lot to assist Durvin, and Durvin remained on the ground in the same location where she had slipped. The area around where Durvin sat appeared wet. Nelson had applied ice-melt treatment to the area of the parking lot where Durvin had slipped approximately an hour and a half before Durvin's fall. Jenkins instructed Nelson to re-apply ice-melt to the parking lot, and Nelson complied.

### B. Procedural History

After her fall, Durvin filed a Complaint in this Court against the United States, seeking $300,000 in compensatory damages under the Federal Tort Claims Act ("FTCA").[11] Durvin asserts that the United States failed "to exercise reasonable care to eliminate the danger created by the natural accumulation of ice and snow on its parking lot" and failed to adequately warn about the hidden dangerous condition of the parking lot. (Compl. ¶¶ 10, 16-17.) The United States timely filed an answer, denying any negligence.

The United States now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(c), arguing that Durvin has presented no admissible evidence to establish that the United States breached its duty of care or duty to warn.[12] In response, Durvin contends that genuine issues of material fact exist as to whether the United States breached its duty of care or duty to warn, precluding summary judgment.

---

[11] 28 U.S.C. § 2671 *et seq.*

[12] The United States also moves for summary judgment based on the argument that Durvin was contributorily negligent as a matter of law. Because the Court grants summary judgment in the United States' favor on other grounds, the Court need not reach this argument.

## II. Standard of Review

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Anderson*, 477 U.S. at 248-50. Once a party has properly filed evidence supporting the motion for summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but instead must set forth specific facts illustrating genuine issues for trial. *Celotex Corp.*, 477 U.S. at 322-24. These facts must be presented in the form of exhibits and sworn affidavits. Fed. R. Civ. P. 56(c).

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Whether an inference is reasonable must be considered in conjunction with competing inferences to the contrary. *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 818 (4th Cir. 1995). Nonetheless, the nonmoving "party is entitled 'to have the credibility of his evidence as forecast assumed.'" *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (*quoting Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)). Ultimately, the court must adhere to the affirmative obligation to bar factually unsupportable claims from proceeding to trial. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (*citing Celotex Corp.*, 477 U.S. at 323-24).

## III. Analysis

### A. Applicable Law on Duty of Care and Duty to Warn

For this action brought under the FTCA, the Court must apply the law of the place "where the act or omission occurred." 28 U.S.C. § 1346(b)(1); *Cibula v. United States*, 551 F.3d 316, 319 (4th Cir. 2009). Accordingly, the parties agree that Virginia law governs this matter.

"Under the FTCA, the United States would be liable for [Durvin's] injuries only if a private person operating a business would be liable for the accident under Virginia law." *Betterton v. United States*, No. 98-2751, 1999 WL 623273, at *1 (4th Cir. Aug. 17, 1999) (*citing* 28 U.S.C. § 2674).

In Virginia, to establish a prima facie negligence claim, a plaintiff bears the burden of proving "the existence of a legal duty, a breach of the duty, and proximate causation resulting in damage." *Atrium Unit Owners Ass'n v. King*, 585 S.E.2d 545, 548 (Va. 2003); *see also Trimyer v. Norfolk Tallow Co.*, 66 S.E.2d 441, 443 (Va. 1951); *Betterton*, 1999 WL 623273, at *1. Because Durvin was an invitee on the premises of the post office, "the United States owed her the duty of using ordinary care to maintain the premises in a reasonably safe condition and to warn her of any hidden dangers." *Betterton*, 1999 WL 623273, at *1. As the Supreme Court of Virginia has articulated, "[t]he rules applicable to slip-and-fall cases are well settled." *Winn-Dixie Stores, Inc. v. Parker*, 396 S.E.2d 649, 650 (Va. 1990).

> "The [store owner] owed the [customer] the duty to exercise ordinary care toward her as its invitee upon its premises. In carrying out this duty it was required to have the premises in a reasonably safe condition for her visit; to remove, within a reasonable time, foreign objects from its floors which it may have placed there or which it knew, or should have known, that other persons had placed there; to warn the [customer] of the unsafe condition if it was unknown to her, but was, or should have been, known to the [store owner]."

*Id.* (*quoting Colonial Stores Inc. v. Pulley*, 125 S.E.2d 188, 190 (Va. 1962)) (alterations in original). "'[S]uch notice is not required where the dangerous condition is open and obvious, and is patent to a reasonable person exercising ordinary care for his [or her] own safety.'" *Fultz v. Delhaize Am., Inc.*, 677 S.E.2d 272, 274 (Va. 2009) (*quoting Knight v. Moore*, 18 S.E.2d 266, 269 (Va. 1942)). Further, a business owner is not the insurer of a customer's safety. *Langhorne Rd. Apts., Inc. v. Bisson*, 150 S.E.2d 540, 542 (Va. 1966).

"In the case of snow removal, the Virginia Supreme Court has defined the standard of care, requiring the business owner to 'use reasonable care to remove natural accumulations of snow and ice from walkways reserved for the common use . . . within a reasonable time after the storm ceased.'" *Betterton*, 1999 WL 623273, at *2 (*quoting Bisson*, 150 S.E.2d at 542) (omission in original). "However, there is no duty to insure that *all* snow and ice is removed, so long as a systematic effort is undertaken." *Id.* (*citing Wynne v. Spainhour*, 205 S.E.2d 634, 635 (Va. 1974); *Walker v. Mem'l Hosp.*, 45 S.E.2d 898, 902 (Va. 1948)).

### B. Analysis of Factually Similar Cases

*Wynne v. Spainhour* provides a factually similar scenario to the case at bar. 205 S.E.2d 634 (Va. 1974). In *Wynne*, the plaintiff visited the defendant's business premises to purchase gasoline after a heavy snowstorm. *Id.* The defendant had scraped the snow from the parking lot with a tractor and blade and spread rock salt over the remaining icy spots in the parking lot twice a day. *Id.* at 635. "While passing between two parked cars, [the plaintiff] stepped on what he thought was 'a dark moisture spot.' The spot was in fact ice, and the plaintiff slipped and fell to the pavement, breaking his hip." *Id.* at 634-35. Three to four hours before the plaintiff's arrival, the defendant had spread salt over the area where the plaintiff fell. *Id.* at 635. Based on this evidence, the Supreme Court of Virginia concluded:

> By scraping the snow from the parking lot soon after the storm and attempting thereafter to remove systematically the remaining spots of ice, the defendant did all that ordinary care required to maintain his premises in a reasonably safe condition for the plaintiff's visit. And, because the remaining icy spots were open and obvious, the defendant was not required to warn of their presence. Therefore, the defendant did not breach any duty he owed the plaintiff.

*Id.* Reversing the jury verdict in favor of the plaintiff, the Supreme Court of Virginia held that the evidence was insufficient as a matter of law to show negligence on behalf of the defendant. *Id.*

In *Betterton v. United States*,[13] a driver lost control of her vehicle due to ice in a post office parking lot and struck the plaintiff. 1999 WL 623273, at *1. Two days earlier, following a heavy snowfall, the defendant had used a front-end loader to remove accumulated snow from the parking lot, had pushed the snow to the lower end of the parking lot to prevent melting snow from flowing back into the parking lot, and had shoveled the loose snow the front-end loader had missed. *Id.*

Citing *Wynne*, the Fourth Circuit stated, "[T]here is no duty to insure that *all* snow and ice is removed, so long as a systematic effort is undertaken." *Id.* at *2 (*citing Wynne*, 205 S.E.2d at 635; *Walker*, 45 S.E.2d at 902). In affirming the district court's order granting summary judgment in favor of the defendant, the Fourth Circuit determined that the defendant fulfilled its duty to exercise ordinary care to maintain the parking lot in a reasonably safe condition, even if ice and snow remained in the parking lot. *Id.* Further, the Fourth Circuit concluded that the defendant had no duty to warn because any remaining icy spots in the parking lot were open and obvious. *Id.*[14]

---

[13] The Court recognizes that this opinion by the United States Court of Appeals for the Fourth Circuit is unpublished and not binding authority. However, given the factual similarities, the Court finds the reasoning in this opinion persuasive.

[14] Durvin's attempts to distinguish *Betterton* do not persuade the Court. For example, Durvin argues that the defendant in *Betterton* pushed the snow to the lower end of the parking lot to prevent melting snow from flowing back into the parking lot, whereas Jenks & Jenks, LLC pushed the snow toward the entrance of the post office, allowing the snow bank to melt and refreeze.

In *Sanderson v. Boddie-Noell Enterprises, Inc.*, the plaintiff slipped and fell on the sidewalk of the defendant's business after a snowstorm. 3:04cv888, at 2 (E.D. Va. June 13, 2005), *aff'd* 172 F. App'x 17 (4th Cir. 2006). The defendant had shoveled and salted the sidewalks two times that day prior to the plaintiff's arrival and had posted yellow caution signs on the sidewalk. *Id.* at 10-11. Although ice remained in the parking lot, the district court granted summary judgment in the defendant's favor, finding that no reasonable jury could find that it failed to exercise reasonable care to make its premises reasonably safe under the circumstances. *Id.* at 12.

### C. As a Matter of Law the United States Did Not Breach Any Duty Owed to Durvin

Similar to the cases discussed above, the undisputed facts of this case show that the United States satisfied its obligation with respect to snow and ice removal and therefore satisfied the duty of care owed to Durvin. Due to the snowfall on December 18 and 19, 2009, Jenkins arranged to have the post office parking lot and sidewalks plowed and treated with ice-melt

---

Durvin supports her argument by citing to an affidavit from her expert and the attached AccuWeather report. The AccuWeather report states: "On some paved surfaces that had been cleared following the storm, water from melting of nearby accumulated snow on December 20th had frozen overnight and the resulting icy patches remained between 9:00 a.m. and 9:30 a.m. on December 21st." (Pl.'s Resp. Ex. 4, AccuWeather Report 2.) However, even presuming her expert meets the admissibility standards under Federal Rule of Evidence 702, her expert and the AccuWeather report do not offer conclusions specific to how ice patches formed in the post office parking lot.

Even under the presumption that black ice caused her fall, Durvin has presented no admissible evidence to support her theory on how the "black ice" which caused Durvin's fall formed. No admissible evidence suggests that the United States caused this particular black ice patch to form. For example, no evidence suggests the parking lot had a particular slope or grade causing the snow bank to melt and refreeze in the handicapped parking spaces. The "black ice" she slipped on "could just as likely have formed from snow falling from another customer's parked car, a spilled drink," or a different source altogether. *Harris v. Wal-Mart*, No. 1:05cv17, 2006 WL 288401, at *6 (W.D. Va. Feb. 6, 2006), *report and recommendation adopted by* 2006 WL 1049476 (W.D. Va. Mar. 30, 2006).

10

chemicals on December 19, 2009 and December 20, 2009. On December 19, 2009, Jenks & Jenks, LLC plowed and spread ice-melt treatment to the parking lot and sidewalks, and Jenkins spread ice-melt through the parking lot and sidewalks on five or six occasions. Between the afternoon of December 19, 2009 and the morning of December 21, 2009, the parking lot was re-plowed. On December 21, 2009, approximately an hour and a half before Durvin's arrival, Nelson spread ice-melt throughout the parking lot and sidewalks, including to the area where Durvin eventually fell.

"By scraping the snow from the parking lot soon after the storm and attempting thereafter to remove systematically the remaining spots of ice, the [United States] did all that ordinary care required to maintain [its] premises in a reasonably safe condition for [Durvin's] visit." *Wynne*, 205 S.E.2d at 635. Although Durvin slipped and fell on ice, she has offered no evidence to refute the United States' evidence that it had made the premises reasonably safe for its customers by systematically endeavoring to remove the snow and ice. Ultimately, the record before the Court cannot establish that the United States breached the duty of care owed to Durvin.[15]

---

[15] Durvin's attempts to refute this finding fail for the following reasons. First, Durvin argues that the United States failed to exercise reasonable care because the United States knew or had reason to know that Nelson did not put ice-melt down in time for the ice-melt to work prior to Durvin's fall. (*See* Pl.'s Resp. Ex. 3, Nelson Dep. 25:22-26:4 (testifying that ice-melt took about twenty minutes to work on a sunny day, but that it took much longer to work on a cold, cloudy day such as December 21, 2009).) However, Durvin's argument ignores the fact that under Virginia law, "there is no duty to insure that *all* snow and ice is removed, so long as a systematic effort is undertaken." *Betterton*, 1999 WL 623273, at *2 (*citing Wynne*, 205 S.E.2d at 635; *Walker*, 45 S.E.2d at 902). Regardless, the undisputed evidence shows that Nelson put ice-melt down about an hour and a half prior to Durvin's fall, and no admissible evidence suggests that this time frame would be insufficient for the ice-melt to work. To reach such a conclusion based on the admissible evidence before the Court would constitute pure speculation.

Second, Durvin argues that the United States "has produced no evidence" that the amount of ice-melt used by Nelson on December 21, 2009 "was sufficient to adequately treat the ice that had formed in the parking lot overnight from December 20 to December 21, 2009." (Pl.'s Resp.

11

The undisputed evidence also demonstrates that the United States had no duty to warn Durvin about the slippery condition of the parking lot because Durvin knew or had reason to know that the parking lot might be slippery. Under Virginia law:

> [T]he duty to warn . . . exists only with respect to latent dangers, not to those which are or ought to be obvious to the invitee. To sustain a charge of negligence the unsafe condition relied on must be one of which the owner knew or should have known, *and the invitee did not know and could not reasonably have discovered.*

*Trimyear*, 66 S.E.2d at 444 (emphasis added). Based on the undisputed evidence, Jenkins and Nelson observed visibly icy spots in the parking lot. Although Durvin testified she does not recall whether or not she saw ice in the parking lot, she admitted that a photograph taken shortly after her fall shows visible ice in the parking lot and that nothing obstructed her view of the parking lot. Further, Durvin knew the parking lot might be slippery and icy and accordingly modified her behavior by walking carefully toward the post office entrance.

This undisputed evidence demonstrates that Durvin had actual knowledge of the parking lot's slippery condition or at the least could have reasonably discovered the slippery condition of the parking lot. "[T]he evidence does not show knowledge, actual or constructive, of a hidden danger on the part of the [United States] superior to the knowledge of [Durvin]." *Trimyear*, 66 S.E.2d at 445. Because the condition of the parking lot was open and obvious, the United States had no duty to warn Durvin of its icy or slippery condition.

---

14-15.) Durvin misstates the burden. Durvin bears the burden of demonstrating the United States' negligence, and she has not produced admissible evidence showing that the amount of ice-melt used would inadequately treat the parking lot. Although she offers a questionably admissible AccuWeather report stating that "a high concentration of salt or other ice-melting compounds would have been needed to prevent . . . icy patches from forming" between December 20 to December 21, 2009," the report provides no conclusions as to the sufficiency of the amount of ice-melt used by the post office to treat its parking lot. (Pl.'s Resp. Ex. 4, AccuWeather Report 2.)

12

Durvin's argument that the particular ice patch she slipped on was invisible "black ice" triggering the United States' duty to warn does not persuade otherwise. First, the record suggests that the black ice was not invisible because Durvin herself admits it appeared shiny and a post office employee described the area where Durvin fell as wet. Second, even if the black ice which caused Durvin's fall were invisible, Durvin has failed to show that the United States had actual knowledge of this invisible black ice.[16] To the extent Durvin argues that the United States should have known about the presence of black ice based on its actual knowledge of other visible ice, the same argument would apply to her.[17] Third, while the Court is sympathetic toward Durvin's injury, the Court declines to set a precedent requiring a place of business to scour the parking lot and provide separate warnings for individual "black ice" patches. The location of the patches could change regularly and monitoring changes would require extraordinary effort. Virginia law requires only a systematic effort to remove snow and ice, not a requirement to remove all snow and ice, in part because any greater burden would exceed practical capabilities, thereby impermissibly making a business an insurer of a customer's safety.

---

[16] While post office employees saw visible ice in the parking lot, including a visibly icy patch near where Durvin fell, Durvin contends she did not slip on the visibly icy patch near where she fell, but on another invisible patch of ice. This cannot establish or create a material dispute as to any actual knowledge by the United States of the black ice.

[17] Here, Durvin testified that she walked carefully because she knew the parking lot was icy in places, and the photographic evidence shows visible ice near where she slipped. Her conflicting testimony regarding a single patch of black ice cannot create a genuine dispute as to the open and obvious danger she acknowledges existed on December 21, 2009.

13

## IV. Conclusion

For the foregoing reasons, the Court will GRANT the United States' Motion for Summary Judgment. (Docket No. 18.)

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 6/4/12